PETTIBONE *et al. v.* STANFORD.

*(Circuit Court, N. D. Illinois.* November 9, 1891.)

1. PATENTS FOR INVENTIONS—EXTENT OF CLAIM—PRIOR STATE OF ART—INFRINGEMENT.
  Claim 3 of letters patent No. 245.634, issued August 16, 1881, to Thomas J. Jenne and Charles S. Harmon, for an improvement in lifting-jacks, describes the combination, among other things, of "the standard, A, provided with the arms, *v*, * * * collar, C, having the trunnions, *o*, working in journals at the tops of the arms, *v*." *Held* that, in view of the prior state of the art, the claim is limited to the specific elements named, and is not infringed by a jack having a collar integral with the standard, and incapable of any movement.

2. SAME—EXTENT OF CLAIMS.
  Claims cannot be enlarged by construction.

In Equity. Suit by Pettibone, Mulliken & Co. against Arthur L. Stanford for infringement of patent. Bill dismissed.

*Dyrenforth & Dyrenforth*, for complainants.

*Geo. Payson* and *L. L. Bond*, for defendant.

GRESHAM, J. This suit is brought by the complainants, as assignees of letters patent No. 245,634, granted to Thomas J. Jenne and Charles S. Harmon, August 16, 1881, for a new and useful improvement of a lifting-jack, covered by a patent previously issued to Jenne. The third and only claim which it is charged the defendant infringes reads:

"(3) The combination of the standard A, provided with the arms *v*, having the cross-plate *h*, collar C, having the trunnions *o*, working in journals at the tops of the arms *v*, lifting-bar B, passing through the collar C, lever D, working upon the trunnions *o* as a fulcrum, friction collars or pawls E and E′ upon the bar B, and clevis F, connecting the short arm of the lever D with the pawl E, substantially as described."

This jack is designed for lifting heavy weights, and especially for railway use. As illustrated in the drawings, and described in the specification, it comprises an iron standard bifurcated near the upper end, its two arms standing apart to accommodate between them gripping pawls, which embrace and bite a lifting bar. The front face of the standard is provided with two longitudinal flanges extending from the base-plate, which is integral with the standard, to the two expanding arms, which flanges serve as guides for the lifting-bar. This bar has a foot at its lower end, and is screw-threaded at its upper end to receive a nut. The jack is operated under a load or object resting on the head or top of the lifting-bar, as well as on the foot or projection at its lower end. The upper friction pawl is connected with the lever by means of a clevis, and the application of force to this pawl on one side causes it to bite and raise the bar. When the lever is raised to a sufficient height, this pawl strikes the upper edge of a plate which is connected with the arms of the standard at the rear of the bar, and is thus left free to take another grip. The lower pawl dogs the lifting-bar at any desired elevation, and prevents it from dropping back. For this purpose the pawl rests on one side upon a part of the standard where it begins to bifurcate. This pawl is in close proximity to a plate above it, so that, when the bar is raised, the pawl is brought into contact with the plate, and forced to release its bite on the bar without rising with it. To facilitate dropping the bar, the lower pawl is provided with a lip, which can be operated by the foot or hand to cause it to release its hold:

"C is a collar, through which the bar passes at the upper end of the standard, and which is provided with trunnions *o* resting in journals in the top of the upright arms *v*. These trunnions also form the fulcrum of the lever D. The caps *n* of the journals are fitted to the arms *v* by means of dovetailed projections *m*, which fit into recesses of corresponding form in the upper ends of the arms *v*. The caps are placed in position by forcing the projections laterally into the recesses from the outside, where they are obviously held firmly in position against any upward pressure. This method of securing the caps is preferable to fastening them with bolts, both because it enables the cap to resist a greater upward strain, and because it is more readily applied."

The specification further says:

"We prefer to flatten a part of the lower face of each trunnion *o* where it enters the journals, as shown in Fig. 7, to prevent it from turning under a severe strain."

The lifting-bar and the load are raised by operating the lever, the short end or socket of which is made in two parts, in order that the lever may be fulcrumed on the trunnions of the collar. The specification and drawings show a separate collar, with projecting trunnions on opposite sides resting in recesses, called "journals," in the top ends of the two arms. This collar is not integral with the standard, and the trunnions are confined in their bearings or journals as above described. The elements of claim 3, except "collar, C, having trunnions, *o*, working in journals at the tops of the arms, *v*," are found in the prior art in substantially the same arrangement, and operating in the same way. If

there is anything in the jack covered by the third claim which distinguishes it from the prior art, it is this collar, with its trunnions confined in the journals, and serving as a fulcrum for the lever.

The defendant's lifting-bar is guided in the standard as the bar is guided in the complainant's jack, and other jacks found in the prior art; but the upper guide of the defendant's bar is a slot or opening in the head of the standard which is formed by bringing the two arms or branches together, thus making the guide integral with the standard, and not separate and distinct from it. The two forks or prongs of the defendant's lever embrace the top or head of the standard, and are fulcrumed on the protruding ends of a pin which passes through the head. This pin is slightly in front of the lifting-bar, and directly over the load, and the center of the base. It is urged that this is a mere mechanical modification of the complainants' jack, and in no sense a departure from the invention covered by the third claim. It is not denied that the other claims of the patent are for a specific construction of the combined elements, but it is urged that the claim in controversy is not thus limited, for the reason that it is for a general combination of parts. In view of the language of the claim, and the specification and the state of the art, the patent is a narrow one. The claim embraces a collar of particular construction, namely, "collar, C, having the trunnions, o, working in journals at the tops of the arms, v." This language clearly excludes the idea of an absolutely rigid union between the collar and the standard. Trunnions working in journals cannot mean trunnions rigidly united to the journals. The patentees doubtless thought that, in order to make their jack operative, the collar and trunnions should be so confined in their bearings as to have some play; and the ingenuity of no expert can make it appear that a collar with trunnions working in journals means a collar integral with the standard, and incapable of any movement. The complainants' expert, in effect, eliminates from the claim words which are not at all ambiguous, but have a clear and distinct application, and imports into it language which is unwarranted by the specification. He even goes so far as to say that the statement that the trunnions work in their bearings is a mistake. The specification and drawings show just how the collar and trunnions, which may be easily removed, are held in place, not rigidly, but "firmly against any upward pressure." Jenne and Harmon were mere improvers, and the thing claimed is limited to the particular elements of the combination. A jack which does not contain a collar at the top capable of some movement in its bearings does not infringe the claim in controversy, and we have seen that the collar or upper guide of the defendant's jack is integral with the standard, and incapable of any play or movement whatever. The language of the claim is explicit and clear, and the court is not at liberty to enlarge it beyond its plain scope; nor can the complainants be allowed to show by experts that the invention is broader than the terms of the claim. The bill is dismissed for want of equity.